# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# CENTRAL DIVISION

ERIC CARTER                                                                                           PETITIONER
ADC #129514

V.                              No. 4:20-CV-01023-DPM-JTR

DEXTER PAYNE, Director,
Arkansas Division of Corrections                                                    RESPONDENT

## RECOMMENDED DISPOSITION

The following Recommended Disposition has been sent to Chief United States District Judge D. P. Marshall Jr. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection; and (2) be received by the Clerk of this Court within fourteen (14) days of the date of this Recommendation. If you do not file objections, Judge Marshall may adopt this Recommendation without independently reviewing all of the evidence in the record. By not objecting, you may waive the right to appeal questions of fact.

## I. Introduction

Pending before the Court is a § 2254 Petition for a Writ of Habeas Corpus filed by Petitioner Eric Carter ("Carter"), a prisoner in the Arkansas Division of Correction. *Doc. 2*. In his Petition, Carter challenges his rape conviction in Hot Spring County Circuit Court on the grounds that: (1) his conviction is based on

constitutionally insufficient evidence (*Doc. 2-1 at 8-12*); and (2) he received constitutionally ineffective assistance from his trial counsel. *Doc. 2-1 at 13-18*.

Respondent Dexter Payne, in his Response, argues that all of Carter's habeas claims should be dismissed because they were either procedurally defaulted or reasonably adjudicated in state court. *Doc. 15*. Carter filed a Reply Brief. *Doc. 19*.

On March 11, 2022, Carter moved to supplement his Petition with a new argument that his trial counsel committed a *McCoy* violation which resulted in structural error. *Doc. 25*. Respondent filed a Response arguing this claim is untimely, procedurally defaulted, and lacks merit. *Doc. 26*. Carter filed a Reply. *Doc. 28*. Thus, the issues are now joined and ready for disposition.

## II. Background

During a multi-day jury trial in Hot Spring County Circuit Court, evidence established that, around midnight on April 20, 2016, Carter went to T.S.'s home in Malvern, Arkansas. T.S. was a 31-year-old woman with learning disabilities. Carter knew T.S. and had intermittent contact with her prior to April 20, 2016. That night, Carter pinned T.S. down and raped her. During the rape, Carter injured T.S.'s shoulder and left a bite mark on her right breast. *Doc. 15-4, at 319-444; Carter v. State,* 2019 Ark. App. 57, 2, 568 S.W.3d 788, 791 (2019).

On November 3, 2017, the jury convicted Carter of Rape, and the trial judge sentenced him, later the same day, to forty (40) years in the Arkansas Department of Correction. *Doc. 15-5 at 380-381, 391-392*.

### III.  Discussion

In a § 2254 habeas action, a state prisoner may only challenge his conviction or sentence in federal court on the ground that it was in violation of the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2254(a). Furthermore, such a habeas petitioner must exhaust all remedies available in the state courts before filing his § 2254 action in federal court. 28 U.S.C. § 2254(b)(1).

While Carter fully exhausted his claim that his conviction was not supported by constitutionally sufficient evidence, he only fully exhausted portions of his ineffective assistance of counsel claims. Finally, in his supplemental Petition, Carter erroneously alleges that his trial counsel committed a *McCoy* violation as a way to raise "new claims" that were procedurally defaulted several years ago.

For the reasons explained below, the Court recommends that Carter's habeas Petition be DISMISSED, with prejudice, and all pending motions be DENIED as moot.

#### A.  Constitutionally Sufficient Evidence Supports Carter's Rape Conviction

Much of the direct evidence supporting Carter's conviction for raping T.S. came from her uncorroborated trial testimony. Carter claims that, because T.S. was

mentally challenged, corroborating evidence was required to sustain his conviction. *Doc. 2-1 at 8-12*.

Carter initially raised this challenge to the sufficiency of the evidence on direct appeal. In rejecting the argument, the Arkansas Court of Appeals began by identifying the elements of rape under Arkansas law:

> A person commits rape if he or she engages in sexual intercourse or deviate sexual activity with another person by forcible compulsion. Ark. Code Ann. § 5-14-103(a)(1)(Supp. 2017). "Sexual intercourse" is penetration, however slight, of the labia majora by a penis. Ark. Code Ann. § 5-14-101(11). "Deviate sexual activity" is defined as any act of sexual gratification involving (A) the penetration, however slight, of the anus or mouth of a person by the penis of another person; or (B) the penetration, however slight, of the labia majora or anus of a person by any body member or foreign instrument manipulated by another person. Ark. Code Ann. § 5-14-101(1). "Forcible compulsion" means physical force or a threat, express or implied, of death or physical injury to or kidnapping of any person. Ark. Code Ann. § 5-14-101(2).

*Carter v. State*, 2019 Ark.App. 57, 12-13, 568 S.W.3d 788, 796.

Next, the Court summarized T.S.'s testimony describing how Carter raped her:

> T.S. testified that [Carter] had refused to leave her home, had bitten her on her right breast, dug his fingernails into her left arm, pinned her over the couch, and penetrated her vagina with his fingers and his penis. T.S. also testified that [Carter] had touched her anus. Moreover, [Carter] threatened her not to tell anyone of the rape, or he would kill her.

*Carter*, 2019 Ark. App. at 13, 568 S.W.3d at 796.

The Court noted the testimony of T.S.'s mother, who stated that T.S. has a learning disability and the I.Q. of a first grader. *Id.* at 7. The Court also discussed in

detail the clinical evaluation performed by Regina Weiner, a licensed psychological examiner:

> During the interview, Weiner observed that T.S. operated with a high level of anxiety. T.S.'s I.Q. was assessed at 46 for nonverbal, 43 for verbal, and 42 for full scale. A standard I.Q. is between 85 and 100. Regarding T.S.'s ability to describe an event that she experienced, Weiner indicated that T.S. was able to describe it using her own words and to tell you what happened. However, she may tell it out of order or have some problems explaining how many times something had happened. Weiner further testified that T.S. has characteristics of autism spectrum disorder. In terms of whether T.S. could give reliable testimony, Weiner opined that T.S. was able to talk, able to remember things that had happened to her, and not likely to deliberately lie. However, T.S. may have things confused and may not express herself well using her language skills. Therefore, Weiner opined that one may need to additionally corroborate her statements with other testimony and other forms of evidence.

*Carter*, 2019 Ark. App. at 7-8, 568 S.W.3d at 793-94.

Finally, the Court cited well-established Arkansas case law to support its holding that T.S's testimony did not require corroboration:

> A rape victim's uncorroborated testimony describing penetration may constitute substantial evidence to sustain a conviction of rape, even when the victim is a child. *Breeden v. State*, 2013 Ark. 145, 427 S.W.3d 5. The rape victim's testimony need not be corroborated, and scientific evidence is not required. *Id*.

*Carter*, 2019 Ark. App. at 13, 568 S.W.3d at 796.[1]

---

[1] The Court also made it clear that some of T.S.'s testimony *was corroborated*. A neighbor testified that, sometime in April 2016, he saw Carter's car at T.S.'s home at midnight. Other witnesses testified that they had observed the bite mark on T.S.'s right breast. *Id.*

Evidence is constitutionally sufficient to support a conviction whenever, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Coleman v. Johnson*, 132 S.Ct. 2060, 2064 (2012) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). Where, as here, the state courts have ruled that the trial evidence was sufficient to support the conviction, such decisions may not be overturned simply because the federal habeas court disagrees with the decision. *Id*. at 2062. Instead, a federal court may grant habeas relief only if the decision by the final state appellate court (in this case the Arkansas Court of Appeals) "was contrary to, or involved an unreasonable application of, clearly established Federal law" or "was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d)(1)-(2); *see also Rompilla v. Beard*, 545 U.S. 374 (2005).

As Carter himself notes, under federal law, "a rape victim's testimony is, by itself, normally sufficient to sustain a conviction." *Loeblein v. Dormire*, 229 F.3d 724, 726 (8th Cir. 2000); *Fields v. Kelley*, 2015 WL 2452331 (E.D.Ark. 2015); *Doc. 19*. Moreover, any corroboration requirement for T.S.'s testimony is "a matter of state law which does not implicate a constitutional right cognizable on habeas review." *Redding v. State of Minn.*, 881 F.2d 575, 578 (8th Cir. 1989) (citing references omitted).

In this case, T.S.'s testimony, parts of which were corroborated and parts of which were not, was accepted and believed by the jury. In Carter's direct appeal, the Arkansas Court of Appeals rejected his argument that all of T.S.'s testimony required corroboration. Nothing about that decision involved an unreasonable application of clearly established federal law or represented an unreasonable determination of the facts. Accordingly, it constituted constitutionally sufficient evidence to support Carter's rape conviction. See *Tibbs v. Florida*, 457 U.S. 31, 45 n. 21 (1982) (if the jury believed the victim's testimony, the State's presentation was more than sufficient to satisfy the *Jackson* standard). Accordingly, Carter's insufficient evidence claim is without merit.

### B. Carter's Ineffective Assistance of Counsel Claims

Carter broadly claims that his trial counsel provided ineffective assistance by: (1) failing to investigate witnesses; and (2) failing to call Dr. Dawn Parsons to testify as an expert witness. *Doc. 2-1 at 13-18*. The Arkansas Court of Appeals considered and rejected both of these ineffective assistance of counsel claims on the merits. *Carter v. State*, 2020 Ark. App. 290, 598 S.W.3d 875 (2020).

A federal habeas court is obligated to conduct a "limited and deferential review" of the state court's full merits adjudications of ineffective assistance of counsel claims. *Sera v. Norris*, 400 F.3d 538, 542 (8th Cir. 2005). To obtain relief, Carter must prove that the Arkansas Court of Appeals' decision "was contrary to, or

7

involved an unreasonable application of, clearly established Federal law" or "was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d)(1)-(2). Further, in evaluating the state court's findings of fact, a federal habeas court must accept those findings as presumptively correct, and the habeas petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." *Stenhouse v. Hobbs*, 631 F.3d 888, 891 (8th Cir. 2011) (quoting 28 U.S.C. § 2254(e)(1)).

Thus, Carter has the heavy evidentiary burden of proving, under *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052 (1984), that the Arkansas Court of Appeals' rejection of his ineffective assistance of counsel claims was "unreasonable," *i.e.*, the Court's decision was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility of fair-minded disagreement." *Harrington v. Richter*, 562 U.S. 86, 101-103 (2011).

Meeting this high bar is a daunting task for a habeas petitioner because "[t]he question is not whether a federal court believes the state court's determination under the *Strickland* standard was incorrect but whether the determination was unreasonable – a substantially higher threshold." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (internal quotations and citations omitted). For purposes of §

2254(d)(1), "an unreasonable application of federal law is different from an incorrect application of federal law." *Harrington*, 562 U.S. at 101. "Surmounting *Strickland*'s high bar [for evaluating ineffective-assistance claims] is never an easy task," and "[e]stablishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult." *Id*. at 105 (citations omitted). The standards created by *Strickland* and § 2254(d) "are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Id*.

In his habeas Petition, Carter alleges his trial counsel failed to: (1) interview psychological examiner Dr. Weiner to determine T.S.'s capacity to provide coherent testimony or positively identify Carter; (2) investigate T.S.'s allegation that Carter sexually assaulted her at Camp Couchdale; (3) interview an unidentified employee at Camp Couchdale so counsel "could discover more information why it may have been impossible for Carter to have access to the cabins or to discover if they had any surveillance cameras that could have been used to prove T.S. was lying"; (4) investigate the claims made by H.W., who testified at trial that Carter sexually assaulted her in 2014; (5) prevent Sharon Scheel from testifying and corroborating H.W.'s account of being sexually assaulted by Carter; (6) use "reasonable competent judgment to file a pretrial motion in limine to have Scheel's testimony excluded; and (7) call Dr. Parsons to testify as an expert witness. *Doc. 2-1 at 13-14, 17-18*.

Carter raised "most" of these ineffective assistance of counsel claims in his Rule 37 Petition, [2] filed in Hot Spring County Circuit Court, where he argued his trial counsel was ineffective for:

> (1) failing to investigate the truthfulness of witnesses including H.W., C.W., Don Jordan, T.S., and Sharon Scheel; (2) failing to call expert witness Dr. Dawn Parsons; (3) failing to introduce DVDs; (4) failing to exclude a juror; (5) failing to object to victim-impact evidence; (6) failing to move to dismiss [Carter]'s charge based on a speedy-trial violation; (7) failing to object to the admission of photographs; (8) failing to instruct the jury regarding forcible compulsion; (9) failing to investigate the criminal records of witnesses; (10) failing to adequately question witnesses; and (11) failing to prove that Don Jordan committed perjury.

*Carter v. State*, 2020 Ark. App. 290, 7, 598 S.W.3d 875, 880 (2020).

On September 5, 2019, the trial court held an evidentiary hearing in the Rule 37 proceeding. Both Carter and his trial counsel, Gregory Crain ("Crain") testified.

During Carter's trial, T.S. testified that: (1) Carter took her to a cabin at Camp Couchdale where he worked; (2) once they were inside one of the cabins, Carter showed T.S. a "sex movie" and asked her to touch his penis, which she refused to

---

[2] In his federal habeas Petition, Carter expanded his failure to investigate claim to include allegations of an unidentified potential witness previously employed at Camp Couchdale. *Doc. 15 at 15*. None of those allegations were made in his Rule 37 Petition.

Similarly, in his federal habeas Petition, Carter expanded his ineffective assistance of counsel claim to include new allegations that Dr. Parsons's records would have shown someone other than Carter raped T.S. *Doc. 15 at 25*.

As explained later, apart from Carter procedurally defaulting these new ineffective assistance of counsel claims, by not properly raising them in his Rule 37 proceeding, these claims also fail *on the merits*.

do; and (3) Carter took T.S. home, where he raped her. *Carter*, 2020 Ark. App. at 8, 598 S.W.3d at 880-81.

At the Rule 37 hearing, Carter introduced a letter from a law firm representing Camp Couchdale, which stated that Carter's employment at Camp Couchdale lasted a short time; he was not issued any keys; and he did not have independent access to any of the camp buildings. *Id. at 8-9*. According to Carter's Rule 37 testimony:

> Crain failed to introduce the letter at trial and that the letter would have impeached T.S.'s testimony. [Carter] also testified there was a DVD that contained statements that T.S. had made to the prosecutor and law enforcement regarding [Carter]'s taking her to a cabin at Camp Couchdale where they watched pornographic movies and he sexually assaulted her. [Carter] testified that Crain failed to introduce the DVD, which would have shown T.S.'s testimony was inconsistent.

*Id. at 9*.

Crain offered much different testimony during the Rule 37 hearing:

> Crain testified that he made a conscious decision not to introduce [the DVD or letter] as a matter of trial strategy. He explained that the evidence on the DVD would have been detrimental to appellant because the DVD indicated that appellant may have raped T.S. more than once. T.S. testified at trial that appellant had raped her at her home; the DVD and the letter were obtained in a separate investigation into whether appellant also raped T.S. in a cabin at Camp Couchdale. According to Crain, T.S. could never specify a place or time that she was raped at Camp Couchdale. Therefore, the DVD and the letter did not help appellant's case but would only disclose information that other uncharged rapes may have occurred.

*Id.*

Crain also controverted Carter's testimony about Crain failing to investigate the State's witnesses:

> Crain testified that the State provided him with the criminal history of the State's witnesses; however, there was nothing useful for cross-examination purposes. Crain was aware of rumors that there may have been other rape allegations that may have been made by T.S. in Alaska and Missouri; however, Crain testified he "never could track that down and that—that wasn't true either."

*Id.* at 10.

In his habeas Petition, Carter alleges that, in Dr. Parsons's progress notes, T.S. advised Dr. Parsons, on several occasions around the time of the rape, that T.S.'s neighbor had invited her over while he was nude, masturbated in front of her, and touched her breast and buttocks. *Doc. 2-1 at 17-18*. In addition, Carter alleges that Dr. Parsons "could have provided scientific information to explain why T.S. could not distinguish fact from fiction and why she had a habit to make-up sexual fantasies." *Doc. 2-1 at 18*.

During the Rule 37 hearing, Crain initially testified that Dr. Parsons's report indicated only that T.S. *was being truthful*. At some point, however, it became clear Crain had confused Dr. Parsons with Dr. Weiner:

> After the parties rested and after the circuit court had a recess, Crain came to realize that he had testified incorrectly about Dr. Parsons's report. When Crain testified earlier, Crain had confused Dr. Parsons with Dr. Weiner. Crain did not recall Dr. Parsons ever completing a report. Crain informed the prosecutor of his mistake, and the prosecutor informed the circuit court. The circuit court inquired of [Carter]. In response, [Carter] agreed that Dr. Parsons was not in the courtroom on

> the day of trial, but he contended that Dr. Parsons did complete a report and should have been called as an expert witness. When the circuit court inquired whether the parties wanted to reopen the record and recall Crain to clear up any confusion on the issue, [Carter] objected. The circuit court sustained the objection, and Crain was not recalled.

*Carter*, 2020 Ark. App. at 10.

In denying Carter's Rule 37 Petition, the trial court rejected his ineffective assistance of counsel claim based on Crain's failure to interview Dr. Weiner to determine T.S.'s capacity to testify. *Id. at* 11. The trial court also rejected Carter's ineffective assistance of counsel claim based on Crain's alleged failure to investigate T.S.'s allegation that Carter sexually assaulted her at Camp Couchdale. In doing so, the court noted the potential prejudicial impact of opening the door to what took place between Carter and T.S. at Camp Couchdale:

> Mr. Crain testified that both DVDs had information on them that would have been very damaging to Mr. Carter and it was Mr. Crain's opinion that it was not in Mr. Carter's best interest to present those items to the jury. The Court finds this was a reasonable and prudent trial strategy and that Mr. Crain's conduct did not fall below a level of reasonable professional assistance.

*Id. at 11-12.*

In the same vein, the trial court rejected Carter's argument that Crain provided ineffective assistance of counsel by not investigating H.W. and her reputation for truthfulness:[3]

---

[3] As previously explained, during Carter's trial, H.W. testified that Carter sexually assaulted her in 2014.

13

> Mr. Carter makes conclusory allegations that Mr. Crain should have investigated [H.W.] regarding [her] truthfulness. He offered no proof that an investigation would have produced any relevant evidence that could have been offered in impeachment.
>
> \* \* \* \*
>
> [Mr. Carter alleged] Mr. Crain was ineffective for failing to get the criminal histories of [H.W.] and [C.R.]. Mr. Crain testified that he had their criminal histories and there was nothing in them useful for impeachment. Mr. Carter offered no evidence that either [H.W.] and [C.R.] had criminal histories that could have been used to impeach them. Also, as part of this claim, Mr. Carter argues that Mr. Crain should have obtained credit and sexual histories of [H.W.] and [C.R.]. The Court finds that these two areas of investigation would have been denied and Mr. Carter has offered no evidence that any such histories would have provided admissible evidence.

*Id.* at 11, 13.[4]

Finally, the trial court rejected Carter's argument that Crain should have called Dr. Parsons to testify as an expert witness:

> Mr. Carter did not provide any evidence as to what Dr. Parsons would have testified to, nor did he admit into evidence any report prepared by Dr. Parsons.

*Id.* at 11.

---

[4]The trial court also rejected Carter's argument that Crain failed to move to exclude the testimony of Sharon Scheel:

> Mr. Carter's next claim is that Mr. Crain was ineffective for failing to properly question [H.W.], [C.R.], Jordan, [T.S.], and Scheel. He does not offer anything as to what questions should have been asked or what testimony would have been gained by those questions. He has just made conclusory allegations. The Court does find that Mr. Crain thoroughly cross-examined the witnesses, made many timely objections, and repeatedly tried to keep damaging information from being presented to the jury. Mr. Crain's conduct did not fall below a level or reasonable professional assistance. *Id. at 13.*

14

On appeal, the Arkansas Court of Appeals thoroughly reviewed the trial court's Rule 37 findings, cited and properly applied *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052 (1984), and determined all of Carter's ineffective assistance of counsel claims lacked merit:

> [Carter]'s arguments that Crain failed to adequately investigate impeachment material in preparation for T.S.'s and H.W.'s testimony are conclusory at best and insufficient to provide a basis for postconviction relief. Crain testified at the Rule 37 hearing that he investigated the witnesses' criminal backgrounds and any rumors concerning claims made by T.S. in Alaska and Missouri; however, he did not obtain any useful evidence from those investigations. Moreover, [Carter] appears to expand his argument on appeal in alleging that Crain failed to adequately impeach T.S. regarding the method she used to pay her water bill. An appellant is limited to the scope and nature of his arguments made below, and we consider only those arguments that were considered by the circuit court in rendering its ruling. *Anderson v. State*, 2015 Ark. 18, 454 S.W.3d 212 (per curium).
>
> Next, Crain testified that as a part of his trial strategy, he did not introduce the DVD and the letter from a law firm that was obtained as a result of an investigation into whether [Carter] may have committed additional rapes at Camp Couchdale. Matters of trial strategy and tactics, even if arguably improvident, fall within the realm of counsel's professional judgment and are not grounds for finding ineffective assistance of counsel. *Williams v. State*, 2017 Ark. 123, 517 S.W.3d 397; *Smith v. State*, 2016 Ark. 417, 504 S.W.3d 595. Even if counsel's tactical choices had been different with the benefit of hindsight, the fact that the strategy was unsuccessful does not render counsel's assistance ineffective. *Williams*, *supra*. Moreover, our supreme court has held that the extent to which a witness is questioned, the specific manner of questioning, and the tactical considerations attending those issues do not warrant relief under Rule 37. *Lemaster v. State*, 2015 Ark. 167, 459 S.W.3d 802.
>
> Finally, although [Carter] argues that Crain should have filed a pretrial motion to prevent Scheel from testifying at trial, he fails to specifically

explain under what basis such a motion would have been granted other than to generically state that he did not commit the offense. Because appellant failed to prove he is entitled to relief under *Strickland*, we cannot say that the circuit court's denial of relief for the grounds alleged under this point is clearly erroneous, and we affirm.

*Carter*, 2020 Ark. App. at 16–18, 598 S.W.3d at 885–86.[5]

Finally, the Arkansas Court of Appeals addressed and rejected Carter's ineffective assistance of counsel claim based on Crain not calling Dr. Parsons as an expert witness:

> Where a petitioner alleges ineffective assistance of counsel for failure to interview or call a witness, it is incumbent on the petitioner to name the witness, provide a summary of the testimony, and establish that the testimony would have been admissible into evidence. *Gordon*, *supra*. In order to demonstrate prejudice, the petitioner is required to establish that there was a reasonable probability that, had counsel performed further investigation and presented the witness, the outcome of the trial would have been different. *Id.* When assessing counsel's decision not to call a particular witness, we must take into account that the decision is largely a matter of professional judgment, and the fact that there was a witness or witnesses who could have offered beneficial testimony is not, in itself, proof of counsel's ineffectiveness. *Id.*
>
> We agree with the circuit court that [Carter] failed to meet this burden. At the Rule 37 hearing, [Carter] testified that Crain should have called Dr. Parsons, a clinical psychologist, who appellant alleged interviewed

---

[5]In his habeas papers, Carter alleges a new ineffective assistance of counsel claim based on Crain's failure to interview an *unidentified employee* at Camp Couchdale who supposedly had information helpful to Carter's defense. Carter does *not* identify this employee or provide an affidavit describing the helpful testimony this unidentified employee might provide. Further, based on evidence and testimony in the record, it is clear additional trial testimony related to Camp Couchdale would have highlighted to the jury the possibility that Carter may have committed other rapes. Questioning this still mystery witness about Carter's access to cabins or keys almost certainly would have led to an investigation of new rapes committed by Carter. Nothing about this new, conclusory, vague, and factually unsupported claim is sufficient to state an estimable ineffective assistance of counsel claim against Crain.

> T.S. in 2016. He further asserted that the State gave Crain a copy of Dr. Parsons's report that "could have provided invaluable information concerning [the] victim's truthfulness had it been entered into the record." After Crain testified concerning what he believed was Dr. Parsons's report, the State told the circuit court that Crain was actually thinking of Dr. Maria Weiner, who examined T.S., prepared a report, and testified at trial. The State indicated that Crain did not believe that Dr. Parsons had prepared a report in this case. [Carter], on the other hand, claimed that Dr. Parsons did prepare a report but objected when the State sought to recall Crain to clarify his testimony. Despite [Carter]'s assertion, [he] failed to introduce as evidence any report prepared by Dr. Parsons nor did he summarize what Dr. Parsons would have testified to if called as an expert witness. Thus, [Carter] has failed to meet his burden of establishing that he suffered actual prejudice due to Crain's failure to call Dr. Parsons as an expert witness.

*Carter*, 2020 Ark. App. at 18–20, 598 S.W.3d at 886–87.

There was *nothing* unreasonable about any of the Court's findings and conclusions rejecting Carter's Rule 37 claims. Accordingly, Carter has failed to satisfy his burden of showing that, in rejecting his ineffective assistance of counsel claims, the Arkansas Court of Appeals unreasonably applied *Strickland*, or that its conclusions were based on an unreasonable determination of facts in light of the state court record.[6]

---

[6]Additionally, Carter waited until he filed this habeas action to allege, *for the first time*, that Dr. Parsons's records would have shown someone other than Carter raped T.S. Doc. 2-1 at 17-18; Doc. 15 at 25-28. Beyond Carter's bare assertion of this claim, there appears to be no evidence that Dr. Parsons ever completed a report or had relevant medical records that might show someone other than Carter raped T.S. This complete lack of *any evidence* in the trial court record, in the direct appeal record, in the record from the Rule 37 evidentiary hearing, and in the record in this habeas proceeding, is fatal to this claim.

"[O]nly rarely may a federal habeas court hear a claim or consider evidence that a prisoner did not previously present to the state courts." *Shinn v. Ramirez*, __ S.Ct. __, 2022 WL 1611786, at *6 (May 23, 2022). Carter has failed, even now, to provide evidence necessary to support this

17

### C. Carter's Claims of a *McCoy* Violation And Structural Error

After he initiated this action, Carter moved to supplement his habeas Petition to add a *McCoy* violation and structural error claims. *Doc. 25*. Carter has clearly procedurally defaulted these new claims and he has presented *nothing* to excuse his default. However, even if he did, the Court's narrow holding in *McCoy* does *not* apply to the much different facts in this case.

In *McCoy v. Louisiana*, 138 S. Ct. 1500, 1505 (2018), the defendant, M<sup>c</sup>Coy "vociferously insisted that he did not engage in [a triple murder] and adamantly objected to any admission of guilt." Nevertheless, M<sup>c</sup>Coy's trial counsel told the jury, in his closing argument, that M<sup>c</sup>Coy committed the murders and was guilty. *Id*. The Court found this constituted structural error, and held that "a defendant has the right to insist that counsel refrain from admitting guilt, even when counsel's experienced-based view is that confessing guilt offers the defendant the best chance to avoid the death penalty." *McCoy v. Louisiana*, 138 S. Ct. 1500, 1505 (2018).

During Carter's trial, his attorney, Crain, did not say or do *anything* suggesting Carter was guilty of raping T.S. To the contrary, Crain "thoroughly cross-examined the witnesses, made many timely objections, and repeatedly tried to keep damaging information from being presented to the jury." *Carter*, 2020 Ark. App. at 13, 598

---

claim, *e.g.*, evidence showing a report actually exists or any records or statement from Dr. Parsons to substantiate this claim. Accordingly, it is now far too late for Carter to raise, for the first time, this vague and conclusory claim that is utterly unsupported by *anything* in the record.

S.W.3d at 884. Thus, the Court's holding in *McCoy* has no application to the facts in this case.

Finally, even if *McCoy* applied here, Carter's claim would fail on the evidence. Carter's *McCoy* claim is based on an alleged refusal by Crain to investigate and present bite mark evidence. *Doc. 25*. During the Rule 37 hearing, the trial court credited Crain's testimony over Carter's testimony on the disputed bite mark evidence:

> Mr. Carter alleges that Mr. Crain was ineffective for failing to get dental records to prove the bite marks on [T.S.] did not come from him. Mr. Crain testified that Mr. Carter never told him that the bite marks were not his and the Court finds his testimony credible. As Mr. Carter is in the unique position of knowing whether he caused the bite marks, the Court finds it significant that he did not tell Mr. Crain to get dental records. Mr. Crain's conduct on this point did not fall below a level of reasonable professional assistance.

*Carter*, 2020 Ark. App. at 13, 598 S.W.3d at 883.

This determination by the trial court, in the Rule 37 proceeding, was affirmed by the Arkansas Court of Appeals. Nothing about those determinations was unreasonable in light of the evidence presented during the Rule 37 hearing. A federal habeas court must accept those findings as presumptively correct, and the habeas petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." *Stenhouse*, 631 F.3d at 891 (quoting 28 U.S.C. § 2254(e)(1)). Carter has failed to meet this burden.

## IV. Conclusion

IT IS THEREFORE RECOMMENDED THAT:

1.    The Petition for a Writ of Habeas Corpus (*Doc. 2*) be DENIED, and this habeas action be DISMISSED, WITH PREJUDICE;

2.    A Certificate of Appealability be DENIED pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases; and

3.    All pending motions be DENIED as moot.

Dated this 27th day of July, 2022.

_____
UNITED STATES MAGISTRATE JUDGE